EXHIBIT E





## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: AGREEMENT  
Number of Pages: 8  
Receipt Number : 06-0120693

Recorded: 12/18/2006  
At: 10:24:44 AM

LIBER: M00021437  
PAGE: 360

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0301 | 012.00 | 04.00 | 011.006 |

EXAMINED AND CHARGED AS FOLLOWS  
Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $24.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $1.50 | NO |
| Cert.Copies | $0.00 | NO | RPT | $50.00 | NO |
| SCTM | $0.00 | NO | | | |

Fees Paid $100.50

**THIS PAGE IS A PART OF THE INSTRUMENT**  
**THIS IS NOT A BILL**

Judith A. Pascale  
County Clerk, Suffolk County

| | | | | |
|---|---|---|---|---|
| | **1** **2** | | RECORDED | |
| Number of pages | 8 | | 2006 Dec 18 10:24:44 AM | |
| | | | Judith A. Pascale | |
| This document will be public record. Please remove all Social Security Numbers prior to recording. | | | CLERK OF SUFFOLK COUNTY L M00021437 P 360 | |
| Deed / Mortgage Instrument | | Deed / Mortgage Tax Stamp | Recording / Filing Stamps | |
| **3** | | FEES | | |
| Page / Filing Fee | 24 | | Mortgage Amt. | |
| Handling | 5.00 | | 1. Basic Tax | |
| TP-584 | | | 2. Additional Tax | |
| Notation | 3N 1.50 | | Sub Total | |
| EA-52 17 (County) | | Sub Total 30.50 | Spec./Assit. or | |
| EA-5217 (State) | | | Spec./Add. | |
| R.P.T.S.A. | 50 | | TOT. MTG. TAX | |
| Comm. of Ed. | 5.00 | | Dual Town ___ Dual-County ___ | |
| Affidavit | | | Held for Appointment _____ | |
| Certified Copy | | | Transfer Tax | |
| NYS Surcharge | 15.00 | Sub Total 70 | Mansion Tax | |
| Other | | Grand Total 100.50 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. YES ___ or NO ___ ✓ If NO, see appropriate tax clause on page # ___ of this instrument. | |

| 4 | Dist. 1801 | 0301 01200 0400 011006 0301 01200 0400 020003 | 5 | Community Preservation Fund |
|---|---|---|---|---|
| Real Property Tax Service Agency Verification | | (PTS R CSE A 07-DEC-06) aaJ.D | | Consideration Amount $ _____ CPF Tax Due $ _____ Improved _____ Vacant Land _____ TD _____ TD _____ TD _____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address **RECORD & RETURN TO:** Lehman Brothers Bank FSB 327 Inverness Dr. So. Englewood, Co. 80112 |
|---|---|

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|
| Co. Name | First Place |
| Title # | |

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached _____ SUB A__ _____ made by:
(SPECIFY TYPE OF INSTRUMENT)

JP Morgan Chase Bank NA    The premises herein is situated in
                            SUFFOLK COUNTY, NEW YORK.

TO
Lehman Brothers Bank FSB    In the TOWN of East Hampton
                            In the VILLAGE
                            or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

[100 Briar Patch Road Property]

## SUBORDINATION AGREEMENT

SUBORDINATION AGREEMENT dated as of November 6, 2006 between JPMorgan Chase Bank, N.A. (formerly named JPMorgan Chase Bank and successor by merger to Morgan Guaranty Trust Company of New York, the "Existing Mortgagee"), 270 Park Avenue, New York, NY 10017, and Lehman Brothers Bank FSB (the "New Mortgagee"), 327 Inverness Drive South, Englewood, CO 80112.

Capitalized terms used herein, but not otherwise defined, are defined in Annex 1 hereto.

### RECITALS

WHEREAS, the Existing Mortgagee is the mortgagee under the First Suffolk Mortgage, securing certain obligations owing to the Existing Mortgagee by H. Christopher Whittle (the "Borrower"), and the property subject to the lien of the First Suffolk Mortgage is the property described in Annex 2 hereto (the "Suffolk Property");

WHEREAS, the Existing Mortgagee is also the mortgagee under the Second Suffolk Mortgage, securing certain other obligations owing to the Existing Mortgagee by the Borrower, and the Suffolk Property is also the property subject to the lien of the Second Suffolk Mortgage;

WHEREAS, the Suffolk Property has been sub-divided into two parcels, including the parcel described in Annex 3 hereto and referred to herein as the "100 Briar Patch Road Property";

WHEREAS, the Borrower is the present owner of the 100 Briar Patch Road Property and proposes to deliver the New Mortgage to the New Mortgagee in consideration for a loan to the Borrower by the New Mortgagee in the amount of $8,250,000, with the 100 Briar Patch Road Property to constitute the property subject to the lien of the New Mortgage;

WHEREAS, the New Mortgagee is unwilling to accept the New Mortgage unless the Existing Mortgagee subordinates the liens of the First Suffolk Mortgage and the Second Suffolk Mortgage to the lien of the New Mortgage in so far as such liens extend to the 100 Briar Patch Road Property; and

WHEREAS, the Existing Mortgagee is willing to do so on the terms set forth herein.

NOW, THEREFORE, the parties hereto agree as follows:

1. In exchange for One Dollar and No Cents ($1.00) and other good and valuable consideration (including the application of a portion of the proceeds of the New Mortgagee's loan to repay a portion of the Borrower's obligations secured by the First Suffolk Mortgage), and to induce the New Mortgagee to accept the New Mortgage, the Existing Mortgagee agrees to subordinate the lien of the Suffolk Mortgage and the lien of the Second Suffolk Mortgage on the 100 Briar Patch Road Property to the lien of the New Mortgage.

2. The lien of the First Suffolk Mortgage and the Second Suffolk Mortgage shall be subordinated to the lien of the New Mortgage in the maximum amount not exceeding (a) $8,250,000, the initial amount of the loan secured thereby, less any repayments of principal from time to time, plus (b) any accrued but unpaid interest thereon plus (c) any advances paid by the New Mortgagee under the New Mortgage for protecting its interest in the 100 Briar Patch Road Property (which may be paid by the New Mortgagee without prior notice to the Existing Mortgagee).

3. The subordination contemplated in Section 1 relates to only that portion of Suffolk Property that is the 100 Briar Patch Road Property. The New Mortgagee hereby waives all rights to demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or similar right against Existing Mortgagee. The Existing Mortgagee may proceed with respect to any collateral in whatever order it chooses and may apply the proceeds of such collateral to any of the obligations secured by the First Suffolk Mortgage or the Second Suffolk Mortgage in whatever order it chooses.

4. This Subordination Agreement shall not apply to any extension, renewal or modification of the New Mortgage unless such extension, renewal or modification is consented to by the Existing Mortgagee or such extension, renewal or modification has no adverse effect on the interest of Existing Mortgagee in the 100 Briar Patch Road Property.

5. The New Mortgagee agrees to notify the Existing Mortgagee at least 10 days prior to commencing any foreclosure or other enforcement or collection action under the New Mortgage against the Borrower or the 100 Briar Patch Road Property to collect the indebtedness secured thereby.

6. This Subordination Agreement cannot be amended or modified except in writing signed by the Existing Mortgagee and the New Mortgagee.

7. The words "Existing Mortgagee" and "New Mortgagee" shall include their heirs, executors, administrators, successors and assigns. If there is more than one Existing Mortgagee or New Mortgagee, the words "Existing Mortgagee" and "New Mortgagee" used in this Subordination Agreement include them.

8. Any notice, consent or other communication contemplated hereby shall be given in writing, delivered to the receiving party at the address and facsimile number specified on the signature pages of this Subordination Agreement or such other address and facsimile number as such party shall have subsequently specified to the other party.

[Balance of this page is intentionally left blank.]

The Existing Mortgagee and the New Mortgagee each state that each such person has read this Subordination Agreement and has signed this Subordination Agreement as of the date at the top of the first page.

| JPMorgan Chase Bank, N.A. | Lehman Brothers Bank, FSB |
|---|---|
| *[signature]* | *[signature]* |
| By: Charles O. Freedgood | By: |
| Title: Managing Director | Title: |
| Address for Notices: | Address for Notices: |
| 270 Park Avenue | 327 Inverness Drive South |
| New York | Englewood |
| New York 10017 | Colorado 80112 |
| Fax No: 212-270-0467 | Fax No: |
| Attention: Charles O. Freedgood | Attention: |

Acknowledgment by a Person Within New York State (RPL § 309-a)

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 3rd day of November, 2006, before me, the undersigned, personally appeared Charles O. Freedgood, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

BERNADETTE M. SULLIVAN
Notary Public, State of New York
No. 01SU4815340
New York County
Commission Expires June 30, 2010

Acknowledgment by a Person Outside New York State (RPL § 309-a)

STATE OF COLORADO        )
                         ) ss.:
COUNTY OF Douglas        )

On the 11th day of November, 2006, before me, the undersigned, personally appeared Craig Wildrick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that _____ executed the same in _____ capacity(ies), and that by _____ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____.

_____
(signature and office of individual taking acknowledgment)

Dorothy M. Horton
My Commission Expires 11/14/2008

-3-

(NY) 27008/853/2006 RESTRUCTURING/100.Briar.Patch.Sub.Agt.doc                                    11/03/06 3:52 PM

"First Suffolk Mortgage" means the Amended and Restated Mortgage dated as of December 19, 2001, made by H. Christopher Whittle to JPMorgan Chase Bank, N.A. (formerly known as JPMorgan Chase Bank and successor by merger to Morgan Guaranty Trust Company of New York), in the principal amount of $29,200,000 (as the same may now or hereafter be extended, renewed, supplemented, modified, amended, restated or replaced), recorded on December 31, 2001 in Liber M00019999 at page 764 in the Office of the County Clerk of Suffolk County.

"Second Suffolk Mortgage" means the Mortgage dated as of December 2, 2004, made by H. Christopher Whittle to JPMorgan Chase, N.A., in the principal amount of $2,000,000 (as the same may now or hereafter be extended, renewed, supplemented, modified, amended, restated or replaced), recorded on December 21, 2004 in Liber M00020938 at Page 603 in the Office of the County Clerk of Suffolk County.

"New Mortgage" means the mortgage dated November 6, 2006, from H. Christopher Whittle, as mortgagor, to Lehman Brothers Bank FSB, as mortgagee, in the principal amount of $8,250,000, secured by the 100 Briar Patch Road Property.

## Description of the Premises

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of East Hampton, County of Suffolk and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point in the northwesterly corner of the premises about to be described, at the southwesterly corner of land now or formerly of Roseanne Larkin and the highwater line of Georgica Pond;

RUNNING THENCE North 85 degrees 46 minutes 10 seconds East along the southerly side of land now or formerly of Roseanne Larkin 455.98 feet to the westerly side of Private Road;

THENCE along the westerly side of said Private Road the following 2 courses and distances:

1. South 08 degrees 28 minutes 40 seconds East 442.89 feet to a point;

2. South 08 degrees 19 minutes 40 seconds East 633.44 feet to a monument and land now or formerly of Helen C. Johns;

THENCE along said land now or formerly of Helen C. Johns the following 5 courses and distances;

1. North 64 degrees 02 minutes 44 seconds West 101.22 feet to a monument;

2. South 72 degrees 19 minutes 43 seconds West 88.00 feet to a monument;

3. South 64 degrees 42 minutes 00 seconds West 54.50 feet to a monument;

4. South 69 degrees 55 minutes 40 seconds West 133.93 feet to a monument;

5. South 76 degrees 24 minutes 30 seconds West 113.70 feet to the highwater line of Georgica Pond;

THENCE along the highwater line of Georgica Pond (March 1989) the following 9 courses and distances:

1. North 12 degrees 38 minutes 40 seconds West 182.49 feet to a point;

2. North 9 degrees 21 minutes 40 seconds West 371.95 feet to a point;

3. North 3 degrees 54 minutes 00 seconds East 132.31 feet to a point;

4. North 15 degrees 44 minutes 50 seconds East 167.59 feet to a point;

5. North 0 degrees 32 minutes 00 seconds West 63.41 feet to a point;

6. North 22 degrees 27 minutes 20 seconds West 80.30 feet to a point;

7. North 43 degrees 03 minutes 30 seconds West 38.43 feet to a point;

8. North 29 degrees 09 minutes 50 seconds West 80.67 feet to a point;

9. North 13 degrees 43 minutes 00 seconds West 36.00 feet to the point or place of BEGINNING.

Annex 3
to the Subordination Agreement
(100 Briar Patch Road Property)

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of East Hampton and Town of East Hampton, County of Suffolk and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the division line between Lot 1 and Lot 2;

RUNNING THENCE along land now or formerly of Tishman, South 21 degrees 37 minutes 38 seconds East, 403.06 feet to land now or formerly of Briar Patch Association;

RUNNING THENCE along said land the following 5 courses and distances:

1. North 77 degrees 20 minutes 42 seconds West, 101.22 feet;
2. South 59 degrees 01 minutes 45 seconds West, 88.00 feet;
3. South 51 degrees 24 minutes 02 seconds West, 54.50 feet;
4. South 56 degrees 37 minutes 42 seconds West, 133.93 feet; and
5. South 63 degrees 06 minutes 32 seconds West, 108.62 feet to the approximate shoreline of Georgica Pond;

RUNNING THENCE along said shoreline the following 2 courses and distances:

1. North 26 degrees 52 minutes 38 seconds West, 247.00 feet; and
2. North 21 degrees 55 minutes 16 seconds West, 156.56 feet to the division line between Lot 1 and Lot 2;

RUNNING THENCE along said division line the following 4 courses and distances:

1. South 79 degrees 52 minutes 34 seconds West, 292.55 feet;
2. South 72 degrees 21 minutes 51 seconds West, 43.30 feet;
3. South 56 degrees 48 minutes 01 seconds West, 117.58 feet; and
4. North 17 degrees 55 minutes 06 seconds East, 63.18 feet to land now or formerly of Tishman, the point or place of BEGINNING.